Per Curiam.

We thoroughly agree with the Appellate Division’s disposition of this case. Indeed, our affirmance of its order would have been on that court’s opinion were it not for our dissenting brother’s argument, not treated below, that the city’s use of special equalization ratios, as authorized by article 12-A of the Real Property Tax Law (L. 1968, ch. 1069), is somehow “ inconsistent ” with the use of the property’s “ assessed value” to determine what constitutes a “fair return.” The present opinion is, therefore, addressed exclusively to that new argument.
The position taken appears to be virtually identical to a contention which this court considered and rejected in Matter of Hartley Holding Corp. v. Gabel (13 N Y 2d 306, 310), and no purpose is to be served by again discussing the subject. It is sufficient to point out that the .equalization ratio, representing, as it does, a borough-wide average, “ does not purport to measure ” or reflect the value of any particular property. (Bucho Holding Co. v. State Rent Comm., 11 N Y 2d 469, 472, n. 2.) Thus, although the special equalization ratio is about 7'5%, it is .entirely possible for the petitioners’ property to be assessed at any amount up to 100% of its actual value. Certainly, we may not conclude, merely on the basis of the special equalization ratio, that Plaza’s property is actually worth $2,920,000 (its “ equalized” assessed value) or that its actual return will only amount to 4.7%.
It is true, of course, that the special equalization ratio does enable the city to impose a higher tax rate than the Constitution would otherwise permit but this has little, if any, adverse effect on the petitioners. Real estate taxes are not, as suggested, paid by the landlord out of his 6% fair return to which he is entitled. Rather, they are considered to be part of the operating expenses *632 of the building which are passed directly on to the tenants (Administrative Code of City of New York, § Y51-5.0, g, [1], [a], [4], [i]). Stated briefly, the guarantee of a minimum return of 6%, over and above operating costs (under the Code), on the assessed valuation of rent-controlled property is, in our view, entirely adequate to insure a landlord again'st an unconstitutional confiscation of his property.
The order appealed from should be affirmed, with costs.