(May 22, 2003)

■ ORIBURGER, INC., Appellant, v B.W.H.N.V. ASSOCIATES, Respondent. [760 NYS2d 444] —Order and judgment (one paper), Supreme Court, New York County (Walter Tolub, J.), entered on or about June 14, 2002, which denied plaintiff's motion for injunctive relief and declared that defendant is entitled to terminate plaintiff's lease on the ground that defendant intends to demolish the premises, unanimously reversed, on the law, with costs, the motion granted, the notice of termination tolled pending the determination of the merits of the underlying action, and the matter remanded for further proceedings.

Plaintiff has owned and operated a restaurant at 325 Fifth Avenue since January 1980, when it entered into a 10-year lease of the premises. In 1981, the parties extended the lease another 10 years, to January 2000, and agreed that, "in the event that the landlord shall desire to demolish the premises in which this leasehold forms a part," it could terminate the lease upon one year's notice to plaintiff and payment of $300,000. In 1988, the parties extended the lease again, to January 2010, and amended the demolition clause to provide that, if defendant terminated the lease after August 1, 1991 and before January 30, 2000, tenant would receive the $300,000 payment but that, if defendant terminated the lease after January 30, 2000, plaintiff would not receive any consideration for the termination.

On March 2, 2001, defendant served plaintiff with a notice of termination of lease stating that defendant "hereby elects * * * to terminate the Lease effective March 7, 2002 * * * as it intends to substantially demolish the building" and warning that "unless you remove from said premises on or before March 7, 2002 * * * the undersigned will commence summary

proceedings against you under the Real Property [Actions] and Proceedings Law § 711 to remove you from the premises." The notice was signed by "Mark Ziemba, agent."

On March 4, 2002, plaintiff commenced this action against defendant seeking, inter alia, a declaration that the notice of termination is null and void because it is not authorized by the terms of the lease, is not signed by defendant, and is not supported by any evidence that the building was to be demolished. At the same time, by order to show cause, plaintiff moved for a temporary restraining order staying the running of the notice of termination and for a preliminary injunction tolling the notice of termination pending the determination of the underlying action. Defendant opposed, in an attorney's affirmation, on the grounds that it was not obligated to show that it intended to demolish the building and that plaintiff had not demonstrated a likelihood of success on the merits. Moreover, defendant argued that plaintiff would not be irreparably harmed if defendant maintained its summary proceeding because plaintiff would be entitled to be fully heard on the issues in Civil Court, where expertise on such issues resides and *as the Civil Court * * * has already made findings of fact regarding this owner and its intentions regarding demolition*" (emphasis in original). Defendant annexed to its papers the decision and order of Civil Court, New York County (Carol Edmead, J.), in *BWH NV Associates v Irish Treasures, Inc.* (Index No. 109965/00, Feb. 25, 2002). In a reply affirmation, plaintiff's counsel wrote that "it is interesting to note that decision points out that the lease of one of the major tenants of the building, White Castle, will not expire prior to the year 2007, and apparently cannot be earlier terminated based on demolition."

At the argument on the order to show cause, on March 20, 2002, the motion court announced that "[w]e're here this morning to take testimony on such evidence as the defendant wishes to provide regarding the intentions of the defendant herein to demolish the premises at 325 Fifth Avenue." Plaintiff's counsel interjected that plaintiff was not aware that there would be a hearing that morning and was not in possession of any evidence regarding defendant's intentions to demolish the building because no such evidence was submitted with defendant's papers in opposition to the motion. The court, however, permitted defendant to call as witnesses Jack Michaelson, who identified himself as a consultant to developers in the city, and Mark Ziemba, who identified himself as defendant's managing agent.

In a decision dated April 19, 2002, the court noted that the plans "for this twenty million dollar development are, at best,

in their infancy and that the major expense to date is the $7500 paid to an architectural firm for a zoning study," and that the consultant engaged by defendant has spent "only 27 hours" on the job, has not billed defendant, and "only has a handshake agreement with a man [whom] he only knew on a first name basis as 'Moses.'" Nevertheless, the court denied plaintiff's application for a stay of the running of the notice of termination on the ground that "defendant presently intends to demolish the premises." The court stated that "[w]hat was evident * * * is that the defendant has not rented to new tenants since February of last year and as to the [remainder of its properties on Fifth Avenue], the development site, 50% of the space is vacant and there are agreements with respect to most of the remaining tenancies to vacate by December of this year. Given the state of the utilities, the age of the building and the economics of development, it is clear the demolition is imminent."

Following the entry of this decision, defendant submitted a proposed order that the court ultimately signed. Plaintiff's counter proposed order limited the disposition to a denial of the motion for a stay of the running of the notice of termination pending the determination of this action. It then stated that the temporary restraining order issued by the court on March 5, 2002 would be vacated five days after service of this order with notice of entry and that, "in the event that defendant[ ] [is] successful in this action and in any subsequent action or proceeding to recover possession of the subject premises on the grounds that defendant is demolishing the building, defendant, their successors and assigns are stayed from reletting the subject premises, through January 31, 2010, if demolition of the subject building has not occurred."

Plaintiff enclosed its counter proposed order in a letter to the court dated May 8, 2002 from counsel, stating, "Plaintiff strenuously objects to defendant's attempt to bootstrap a judgment and disposition of plaintiff's many claims in the underlying action, on a decision denying an application for a stay of a Notice of Termination, as defendant has tried to accomplish in its proposed order. The sole request of plaintiff in its motion to this Court was for a stay of the running of the Notice of Termination. There was no cross motion for summary judgment interposed by the defendant."

Plaintiff's counsel also requested a conference with the parties' attorneys in anticipation of a motion for a stay of the signing of the order pending a motion to reargue or renew. Counsel wrote that he had conducted an investigation based on the hearing testimony and defendant's counsel's representations,

which the court apparently relied on in concluding that demolition of the building was imminent and that most of the remaining tenants had agreed to vacate by December 2002. Counsel wrote that this investigation "disclosed some disturbing facts * * * [which] may undermine one of the principal reasons for this Court's decision." Counsel stated that every current storefront leaseholder of all the contiguous properties and two other commercial tenants in the building occupied by plaintiff denied that they had an agreement with defendant to vacate the premises and each one expressed its intention to remain in possession. Indeed, counsel added, at least two of the storefront leaseholders advised that their leases would prohibit removal for years; one of these advised that it could not be removed on the grounds of demolition until December 2007 at the earliest. Moreover, counsel wrote, the other tenants were told that defendant intended to remove the interior of the building and not demolish the entire building. Counsel pointed out that defendant's attorneys represented to the court less than a week before the hearing that the exterior of the building would remain intact and the testimony of its witnesses at the hearing was inconsistent with that representation.

Nevertheless, as indicated, the court signed defendant's proposed order and added the words, "and Judgment," to the caption. Plaintiff then successfully moved in this Court for a temporary restraining order enjoining termination of the lease pending the appeal. We now reverse.

The court's rendering of the instant order and judgment was improvident. The sole issue before it was plaintiff's motion for injunctive relief to toll the termination of the lease. No motion was made by defendant for summary judgment. Defendant had not answered the complaint, submitted any facts in opposition to the motion, or cross-moved for any relief. Yet, the court disposed of the claims plaintiff raised in its action for declaratory judgment on the basis of an impromptu hearing that the court decided to hold on the return date of the motion (see Electronic Data Sys. Corp. v Xerox Corp., 273 AD2d 28, 29 [2000] ["There was no reason for the IAS Court to address the declaratory judgment cause of action since defendant's motion to dismiss only sought dismissal of plaintiff's three other causes of action"]). The minutes of the hearing reflect that plaintiff's counsel had no idea that the court was going to conduct a hearing and, as a result, plaintiff was deprived of the opportunity to conduct discovery or present witnesses or evidence in its behalf.

Moreover, issues of fact exist as to whether the notice of

termination was sufficient on its face to terminate plaintiff's tenancy and whether defendant in fact intended to demolish the building (*see Plaza Mgt. Co. v City Rent Agency,* 31 AD2d 347, 350 [1969], *affd* 25 NY2d 630 [1969] [if there are questions of fact, a declaration must await trial]). Plaintiff asserted in its action for declaratory judgment that the notice of termination was deficient because there was no written authorization granting Mark Ziemba authority to act on the lease. Although no testimony on this issue was elicited at the hearing, the court found that the notice of termination was sufficient on its face to terminate the tenancy. Similarly, while the demolition provision of the lease entitles defendant to terminate the lease if it desires "to demolish the premises," and the notice of termination states that defendant intends "to substantially demolish" the premises, there was no testimony at the hearing on the issue of whether the notice of termination conforms with the demolition provision of the lease.

We can find no support in the hearing testimony for the court's determination that the demolition of the building was imminent. As the court recognized, development plans are in their infancy, at best. Ziemba testified that defendant has not entered into any contracts to draw up plans or submit applications for the demolition of the building. He testified that defendant has not notified one of the other tenants of its intention to demolish the building, as that tenant's lease requires, because "[w]e're not at that stage." Ziemba also testified that his office in the building was renovated two weeks before the date of the hearing.

Finally, plaintiff should have been granted the injunctive relief it requested, having demonstrated "a probability of success, danger of irreparable injury in the absence of an injunction, and a balance of the equities in [its] favor" (*Aetna Ins. Co. v Capasso,* 75 NY2d 860, 862 [1990]). Plaintiff's contention that the notice of termination is defective because it is signed by a previously unidentified agent has merit. The lease provides that notice be given by the "Landlord" (*see Siegel v Kentucky Fried Chicken,* 67 NY2d 792, 794 [1986] [under such a lease, notice of termination signed not by the owner but by someone not named in the lease was insufficient and tenant was entitled to ignore it as not in compliance with lease provisions]). No written authorization granting Ziemba the authority to act on the lease was attached to the notice or submitted by defendant; nor was the issue addressed at the hearing. Moreover, contrary to defendant's contention, plaintiff, who developed its site-sensitive restaurant business over more

than 22 years, would suffer irreparable harm if its lease were terminated. Defendant would not be prejudiced by an injunction pending a determination of the underlying action, which would certainly be resolved by the time White Castle's lease could be disturbed, i.e., 2007. Concur—Buckley, P.J., Mazzarelli, Sullivan, Ellerin and Lerner, JJ.